IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-00006-RBJ

OTIMO MUSIC, INC., a Canadian corporation,

    Plaintiff,

v.

ROYALTY EXCHANGE, INC., a Delaware corporation;
MICHAEL W. CONNER, JR., an individual,
MIH ENTERTAINMENT, LLC, a California limited liability company

    Defendants.

---

**ORDER on MOTIONS TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

---

### I.    BACKGROUND

This case arises out of an online auction conducted by Defendant, Royalty Exchange, Inc. (RX) by which Plaintiff, Otimo Music, Inc. (Otimo) purchased purported royalty rights in a music catalog ("Catalog") associated with the hip hop artist King Lil' G. ECF No. 15 at ¶1-2. Defendant MIH Entertainment, LLC ("MIH") was the company that sold these rights to Otimo using the RX auction. *Id.* at ¶2. Defendant Michael Conner ("Conner"), an individual, acted on behalf of MIH in this transaction. *Id.* at ¶8. Otimo filed a First Amended Complaint raising claims of breaches of contracts against RX and MIH; securities fraud under the Colorado Securities Act against MIH, Conner, and RX; and common law fraud against MIH and Conner. *See generally* ECF No. 15, First Amended Complaint. Otimo alleges that MIH falsely claimed to have certain unencumbered rights in the Catalog and sold them pursuant to the internet auction operated by RX. *Id.* at ¶2. Otimo further alleges that RX misrepresented its level of due

1

diligence to verify the legitimacy of the rights being sold, causing it to pay $420,000 for rights that do not exist or are commercially useless. *Id.* at ¶1.

Otimo is a Canadian Corporation located in Montreal, Quebec Canada, and is a citizen of Canada. *Id.* at ¶4. Otimo is the successor in interest to all of the claims of Ryan Stotland, the individual who made the purchase of the purported royalty rights from MIH on RX. *Id.* RX is a Delaware Corporation with its principal place of business in Denver, Colorado and is a citizen of Colorado. *Id.* at ¶5. MIH is a California limited liability company with its principal place of business in Burbank, California. *Id.* at ¶9. Conner is a citizen of California. *Id.* at ¶7.

Otimo's fraud claim arises in connection with a contract that, significant for present purposes, has a forum selection clause that selected Colorado as the forum for commencing litigation. *Id.* at ¶10. MIH Defendants filed a motion to dismiss for lack of personal jurisdiction, ECF No. 20. Plaintiff filed a response to this motion, ECF No. 22, and MIH Defendants filed a reply to this response, ECF No. 29. This motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

As a district court sitting in diversity, I must exercise personal jurisdiction according to both the forum state's long-arm statute and the Constitution. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Colorado's long-arm statute confers the maximum jurisdiction permitted under the Due Process Clause of the Fourteenth Amendment. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). Thus, my analysis will focus solely on the constitutional due process analysis.

Due process for jurisdictional purposes requires two elements. First, defendants must have "minimum contacts" with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1979). The minimum contacts test may be satisfied through a showing of either general or specific jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998). General jurisdiction exists when defendants

have "continuous and systematic" contacts in the state, even if those are unrelated to pending litigation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction exists when the defendants "purposely directed" their activities at the forum state and the alleged injuries "arise out of or relate to" those activities. *OMI Holdings*, 149 F.3d at 1091.

Second, if sufficient minimum contacts exist, I must determine whether the exercise of personal jurisdiction over defendants offends "traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)). In other words, I must determine whether the exercise of personal jurisdiction over defendants is "reasonable" in light of the circumstances of the case. *Id.* Minimum contracts and reasonableness work hand in hand. "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Trujillo v. Williams,* 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).

While personal jurisdiction must comport with due process, jurisdictional objections can be waived. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486, at n. 14 (1985) ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.") (internal quotation marks and citation omitted).

To meet the test described in *OMI Holdings*, plaintiffs bear the burden of showing that personal jurisdiction exists. However, plaintiff's "burden is light" at this stage. *AST Sports Sci.*, 514 F.3d at 1056. In ruling on a Fed. R. Civ. P. 12(b)(2) motion without holding an evidentiary hearing, plaintiff "need[s] only [to] make a prima facie showing of personal jurisdiction to defeat

the motion." *OMI Holdings*, 149 F.3d at 1091. To do so, plaintiff must plead sufficient facts to show that, if true, jurisdiction would be proper over defendants. *Id.* The burden then shifts to the defendants to show that jurisdiction is not proper. *Id.* Any factual discrepancies must be resolved in plaintiff's favor unless the allegations in the complaint are contradicted by affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the latter occurs, plaintiff must submit a counter-affidavit or other written material to support jurisdiction. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

### III. ANALYSIS

Otimo raises two arguments to show that the exercise of personal jurisdiction over MIH and Conner would be proper. The first is that MIH consented to Colorado's jurisdiction in executing the Revised Listing Agreement dated June 28, 2017 with RX. This agreement states: "The laws of the State of Colorado govern all matters arising from this agreement and the exclusive forum shall be a federal or state court in Denver County, Colorado." ECF No. 15, Ex. 2 ("Listing Agreement") at ¶10.1. Otimo argues that it is an intended third-party beneficiary of the contract and that its dispute with MIH is so interrelated with the Listing Agreement that the forum selection clause is properly invoked. The second argument is that absent a finding of consent to jurisdiction, this Court also has specific personal jurisdiction. Otimo argues that the MIH defendants, in using RX as a platform for selling its purported rights, "purposefully directed" their activities at Colorado, and that Otimo's injuries "arise out of or relate to" those activities so as to establish sufficient minimum contacts. As explained below, I agree that this Court can exercise jurisdiction over MIH pursuant to the forum selection clause of the Listing Agreement. Because I find that MIH consented to jurisdiction in Colorado, I will not address the alternative argument of specific jurisdiction over MIH based on Colorado's long-arm statute.

However, because Conner is not a party to this agreement, I must analyze his minimum contacts with the forum and whether the exercise of personal jurisdiction over him comports with traditional notions of fair play and substantial justice. On this basis, again as explained below, I find that this Court also has personal jurisdiction over Conner.

1) **<u>Invoking the Forum Selection Clause of the Listing Agreement Against MIH.</u>**

Enforcement of a forum selection clause against a consenting party comports with due process if the clause is not "unreasonable and unjust." *See Burger King Corp. v. Rudzewicz*, 471 U.S. at n. 14 (1985). MIH Defendants do not argue that the forum selection clause is unreasonable or unjust, only that it does not apply to them. Otimo makes two arguments to support its position that it can enforce the forum selection clause. First, Otimo argues that as the buyer, it is an intended third-party beneficiary of the Listing Agreement, entitling it to enforce the forum selection clause. Second, it argues that regardless of its status as an intended third-party beneficiary, it can enforce the forum selection clause because its present dispute with MIH is closely related with the Listing Agreement so as to make the enforcement of the forum selection clause foreseeable and fair.

Under Colorado law, a third-party beneficiary need not be specifically mentioned in the contract. "A third party who is not a signatory to an agreement may, nevertheless, have the authority to enforce one or more of the obligations created by that agreement, if the third party is intended by the other parties to be a direct beneficiary of that agreement. . . . [T]hat intent may be evidenced either from the terms of the agreement, the surrounding circumstances, or both." *Villa Sierra Condo. Ass'n v. Field Corp.*, 878 P.2d 161, 166 (Colo. App. 1994) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 843 (Colo. 1992)). If Otimo was intended to be a beneficiary of the Listing Agreement, it should also be able to enforce a forum clause

5

obligation in that agreement. *See, e.g., ADT Sec. Servs., Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1201 (D. Colo. 2006) ("[A] forum selection clause encumbers a third-party beneficiary who could reasonably have foreseen its designation as beneficiary.").

The fact that the Listing Agreement only refers to a hypothetical buyer, and not Otimo specifically, does not affect the analysis. *See* Rest. 2d of Contracts § 308 (1981) ("B promises A to pay anyone to whom A may become indebted for the purchase of an automobile. A buys an automobile from C. B is under a duty to C."). In evaluating whether a third-party beneficiary was intended, the Second Restatement of Contracts instructs us to determine whether "the circumstances indicate that a promise intends to give the beneficiary the benefit of the promised performance." Rest. 2d of Contracts § 302(b) (1981).

The Listing Agreement executed between RX and MIH details the obligations of each party in the sale of MIH's Catalog on RX's platform. A number of provisions in the Listing Agreement support a finding that the future buyer was intended to benefit from the contract. The listing agreement obligated MIH to sell the Catalog to the highest bidder at the contemplated auction. *Id.* ¶ 2.2. MIH represented in the Listing Agreement that "it is the sole owner [*sic*] the Asset and has full authority to enter this agreement and sell the Asset . . . [and] that the Asset is free and clear from all encumbrances and to Seller's knowledge the performance of its obligations does not infringe the rights of any third party." *Id.* ¶ 2.4. It required MIH to provide "complete and accurate" information about the Catalog to RX. *Id.* ¶2.1. The Listing Agreement had MIH acknowledge that information it provided could be posted on RX's marketplace for third parties to review, and gave RX the right to terminate the agreement if it determined that the information provided by MIH was incomplete or inaccurate. *Id.* The Listing Agreement further provided that all income for the Catalog paid after July 31, 2017, regardless of when earned,

would belong to the buyer. To protect the buyer's rights to these distributions, the Listing Agreement permitted RX to withhold, in escrow, 10% of the seller's proceeds from the winning bid until after RX confirmed that the buyer properly received the next distribution. *Id.* ¶6.

The Listing Agreement suggests that one purpose of the agreement was to facilitate the sale of the Catalog to the highest bidder. These provisions seem to be drafted to confer to the future buyer the benefits of the transaction and protect the future buyer from inaccurate or incomplete representations by the Seller. MIH defendants disagree and argue that the Listing Agreement was intended solely to benefit MIH and RX. ECF No. 29 at 4. They assert that the purpose of the Listing Agreement was to facilitate the listing of MIH's asset on RX's marketplace but that no future buyer was an intended beneficiary of this agreement. *Id.* They argue that any benefit conferred to Otimo was incidental, not intentional.

Whether or not Otimo was an intended third-party beneficiary of the contract is a factual dispute. I find that at the motion to dismiss stage Otimo has made a sufficient showing that it was an intended third-party beneficiary of the contract. As such, Otimo can enforce the forum selection clause against MIH.

Otimo also argues that regardless of whether it is an intended third-party beneficiary of the Listing Agreement, the claims against RX and MIH are so closely related to the Listing Agreement that these interrelated claims must be tried together. To support its position, Otimo points to cases that hold that third parties who are closely related to a contractual relationship are bound by forum selection clauses contained in the contracts underlying the contractual relationship. *See, e.g., Frietsch v. Refco, Inc.,* 56 F.3d 825, 827 (7th Cir.1995) (holding that defendant was entitled to invoke choice of forum clause in investment contract between plaintiffs and trustees of investment pool); *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700,

7

708 (E.D. Pa. 2014) (holding that a forum selection clause within a franchise agreement was enforceable against a defendant that had never been in a contractual relationship with plaintiff given her role as the spouse and business partner of the franchisee); *D'Elia v. Grand Caribbean Col, Ltd.*, No. 09-cv-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010) (suggesting that a party who is not a third-party beneficiary may nonetheless enforce a forum selection clause if the party "is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound.").

Though some of these cases concern whether a forum selection clause is enforceable against a third party, as opposed to enforceable by a third party, the Seventh Circuit in *Friestch v. Refco* applied the principle of mutuality to reason that where a clause can be invoked by a party, it can also be invoked against that party, and vice versa. 56 F.3d at 828 ("there is no reason for such an asymmetry of procedural choices"). These cases support the proposition that "a range of transaction participants, parties, and nonparties, should benefit from and be subject to forum selection clauses." *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.,* No. 07-cv-0234-WYD-MEH, 2008 WL 2185882, at *8 (D. Colo. May 23, 2008) (quoting *Manetti-Farrow, Inc. v. Gucci America, Inc.* 858 F. 2d 509 (9th Cir. 1988)).

Here, Otimo does not bring any claims under the Listing Agreement. However, Otimo alleges that its claims against MIH under the Purchase Agreement are sufficiently interrelated with the Listing Agreement so as to permit Otimo to invoke the forum selection clause. The Listing Agreement obligated MIH to sell the Catalog to the highest bidder. Listing Agreement at ¶2.2. In turn, RX's Terms of Use required Otimo to buy the Catalog as the successful bidder. ECF No. 15, Ex. 4. The contractual relationship between MIH and RX and that between RX and Otimo all involved a single transaction – the sale of the Catalog. This lawsuit concerns that

single transaction and representations made prior to and during that transaction. Otimo argues that the Listing Agreement was created between RX and MIH to facilitate this transaction with the future buyer. ECF No. 22 at 10. An important part of facilitating the transaction was requiring MIH to provide accurate and complete information to the future buyer. RX and MIH contemplated the possibility of litigation with a future buyer arising from this contractual relationship, as the Listing Agreement specifies that MIH "shall indemnify and defend [RX] against all losses and liabilities . . . related to [MIH]'s provision and omission of information and [MIH]'s statements of fact in section 2." Listing Agreement at ¶8. As the Listing Agreement obligated RX to use reasonable efforts to prevent the disclosure of the seller's identity, *id.* ¶ 2.1, Otimo did not know of MIH's identity until after it won the auction and was contractually obligated to purchase the Catalog from MIH. ECF No. 22, Ex. 1 (Stotland Dec.) at ¶9-10.

Furthermore, RX's Listing Agreement with MIH and RX's Terms of Use with Otimo have identical forum selection clauses. Otimo is thus required to bring its claims against RX in Colorado. Should the Listing Agreement's forum selection clause be held unenforceable, Otimo would then have to bring two independent lawsuits in two different forums to resolve issues arising from this singular transaction. In sum, the conduct at issue in this lawsuit is sufficiently interrelated with the Listing Agreement and a dispute with Otimo as the future buyer was sufficiently foreseeable so as to make Otimo's invocation of the forum selection clause fair under the theory of interrelated contractual relations as well. Because I find that MIH consented to personal jurisdiction in Colorado, I will not address MIH's contacts with Colorado, and whether or not it purposefully availed itself of the forum. *See Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-CV-02295-LTB, 2008 WL 5411478, at *1 (D. Colo. Dec. 29, 2008) ("When a defendant—by

means of a valid forum selection clause—consents to personal jurisdiction in a certain forum, there is no need to inquire into the defendant's presence or actions within the forum state.")

2) **Michael W. Conner**

MIH Defendants emphasize that Conner is not a party to the Listing Agreement or the Purchase Agreement, and thus should not be subject to personal jurisdiction in Colorado on the basis of the forum selection clause. ECF No. 29 at 2. MIH is the named party in each agreement and Conner signed both agreements in a representative capacity as the Managing Member of MIH, not in his individual capacity. ECF No. 15 at Ex. 2, 4. Jurisdiction over a corporation in a particular forum does not automatically confer jurisdiction over the employees of that corporation. *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013). However, for jurisdictional purposes, courts have disregarded the corporate form when an individual defendant was the alter ego of the corporation or had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president). *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Holfield v. Power Chem. Co.,* 382 F.Supp. 388, 393 (D. Md. 1974) (finding an identity of interests between corporation and corporate president). Otimo states that Conner owns and operates MIH, and the plaintiff in the California lawsuit similarly identified Conner as the CEO, Chairman and shareholder of MIH. ECF No. 15 at ¶8; ECF No. 15, Ex 2 at ¶2. However, Otimo does not allege that Conner was an alter ego of MIH or had an identity of interest with MIH so as to permit the Court to pierce the corporate veil of MIH and substitute Conner in his individual capacity as a party to the Listing Agreement.

Because Conner is not a party to the Listing Agreement in his individual capacity, and thus did not consent to Denver County, Colorado as the exclusive forum, I must determine whether Conner has sufficient minimum contacts with Colorado. To do this, I must first

determine whether his contacts with Colorado in his capacity as a representative of MIH count as contacts with Colorado in his personal capacity. The fiduciary shield doctrine holds that a corporate defendants' contacts cannot be attributed to the corporate officers in determining personal jurisdiction. *Id.* at 1277. "Where the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction." *Id.* (quoting *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F. 2d 1518 (10th Cir. 1987)). However, the 10th Circuit in *Newsome* emphasized that the fiduciary shield doctrine is not a matter of federal due process, but only a matter of state law. *Id.* at 1278. Colorado does not recognize the fiduciary shield doctrine. *Carskadon v. Diva Int'l, Inc.*, No. 12-cv-01886-RM-KMT, 2014 WL 7403237, at *6 (D. Colo. Feb. 26, 2014), *report and recommendation adopted*, No. 12-cv-01886-RM-KMT, 2014 WL 7403233 (D. Colo. Dec. 29, 2014) ("Because the fiduciary shield doctrine does not limit the exercise of personal jurisdiction under the Due Process clause . . . the court will consider *all* of their contacts with Colorado—regardless of whether those contacts occurred in a corporate or individual capacity."). As a result, I will consider all of Conner's contacts with Colorado whether in his personal capacity or as the representative of MIH.

First, there is no general jurisdiction over Conner. There are no allegations of continuous and systematic contacts that make Conner at home in Colorado. In determining whether there are sufficient contacts to establish specific jurisdiction I must look to whether Conner purposefully directed his activities at Colorado, and whether Otimo's injury arose from those activities. Next, I must determine whether the exercise of jurisdiction would be reasonable.

Otimo's First Amended Complaint lists a number of contacts that Conner had with Colorado, all concerning the transaction with RX. Plaintiff alleges that Conner sent fraudulent information to RX in Colorado, ECF No. 15 at ¶38, and that Conner made fraudulent misrepresentations to Otimo to induce it to enter into the Purchase Agreement using Stotland as an intermediary in Colorado. *Id.* at ¶ 113, 116. Plaintiff further alleges that Conner failed to disclose King Lil G's claims to RX, Stotland, or Otimo prior to the sale of the MIH Purported Rights, ¶112, and made material misrepresentations of fact to Stotland. Conner, in acting as a representative for MIH, sought out and hired RX, a Colorado business, to assist in the sale of the Catalog. ECF No. 22 ¶17.

MIH defendants point to case law that holds that the use of an online auctioneer is insufficient to establish personal jurisdiction. *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir, 2008). Otimo argues that the business relationship between RX and MIH was more involved than the relationship between a simple seller to an online auctioneer like eBay. This transaction is more involved because RX received information from MIH, created the listing, promoted the auction, and had MIH conditionally assign to it the Catalog and associated royalty payments to cover its $50,000 holding fee in the event of a non-sale or breach of the agreement by MIH. ECF No. 22 at 13. For MIH's sale to Otimo, RX drafted the agreement assigning the Catalog to Otimo and delivered it to Otimo. *Id.* Conner also hired RX to notify the Royalty Payers of the assignment of the Catalog. *Id.* I agree that RX played a larger role in this transaction for the sale of rights than an online platform for the sale of goods might, and that RX had an involved relationship with the Colorado business.

To show that Conner has taken advantage of the protections of the laws of Colorado, Otimo states that Conner executed the Listing Agreement selecting Colorado as the forum for

resolving disputes as to matters arising out of the agreement, ECF No. 15 at ¶ 45, and that he and MIH derived significant financial benefit from doing business in Colorado with RX, *Id.* at ¶61. On the other hand, MIH Defendants argue that Otimo expressly contracted with a California-entity, and thereby expressly availed itself of the laws of the State of California. ECF No. 29 at 7. However, the terms of the Listing Agreement required RX to prevent the disclosure of MIH's identity, and Otimo did not know of MIH's identity until after it placed the winning bid and was obligated to purchase from MIH. Stotland Dec. at ¶9-10. Otimo's injury arose from this transaction, the statements between Conner and RX, and the use of RX's platform.

Weighing against a finding of minimum contacts are the facts that Conner never traveled to Colorado for this deal, that this transaction with RX was Conner's only contact with Colorado, and that Otimo, the injured party, is not a resident of Colorado. Given those facts, Otimo does not offer a very strong showing of minimum contacts. However, the analyses of minimum contacts and reasonableness are complementary, "such that the reasonableness prong of the due process inquiry evokes a sliding scale . . . [A]n especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *OMI Holdings*, 149 F.3d at 1092.

Here, there is an especially strong showing of reasonableness. In determining the reasonableness of the exercise of personal jurisdiction a court must consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095.

First, the additional burden on Conner to litigate in Colorado is minimal given the fact that MIH will already be litigating this issue in Colorado. Conner as owner of MIH and the only

representative of MIH in this transaction will already be involved in the litigation in Colorado and forced to travel and answer here.  Second, Colorado has a moderate, though not strong, interest in adjudicating the dispute.  This dispute involves the application of the Colorado Securities Act and an alleged fraud facilitated by a Colorado resident.  Weighing against this factor is the fact that the harm was done to a Colorado nonresident, Otimo.

The third and fourth factors, plaintiff's interest in convenient and effective relief and the interstate judicial system's interest in obtaining efficient resolution, together weigh heavily in favor of finding reasonableness.  RX's Terms of Use require Otimo to adjudicate its disputes with RX arising from this transaction in Denver County, Colorado.  Litigating against Otimo and MIH in Colorado, while instituting a lawsuit to resolve the same event against Conner in California will cause Otimo great inconvenience and delay in resolving this dispute.  Trying identical issues in Colorado and California arising from a single transaction hardly serve judicial economy.  The same witnesses, events and parties would be involved in both lawsuits causing needless costs for all involved.  The only witness that MIH Defendants identify as outside of Colorado is King Lil G.  ECF 20, Ex. 1 (Conner Declaration) at ¶10.  Because he would likely be called at trial in Colorado against or by MIH, requiring Conner to also litigate in Colorado would not cause issues for the relevant witnesses.  If anything, it would be better for witnesses as they would not have to be called a second time in California.  The fifth factor, the states interest in furthering fundamental substantive social policies, does not weigh significantly in either direction.  In sum, there is a very strong showing of reasonableness in finding personal jurisdiction over Conner that makes up for the borderline minimum contacts.  Accordingly, I also find personal jurisdiction over Conner.

## ORDER

For the reasons stated herein, MIH Defendants' Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction, ECF No. 20, is DENIED.

DATED this 20th day of December, 2018.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge